(67 App. Div. 312.)

### AUSTIN v. BARTLETT.

(Supreme Court, Appellate Division, Fourth Department. December 3, 1901.)

1. APPEAL—QUESTION FOR REVIEW—PRESENTATION IN LOWER COURT.

The objection that an instruction is not warranted by the pleadings cannot be taken for the first time on appeal.

2. PERSONAL INJURIES—MARRIED WOMAN—ELEMENTS OF DAMAGE.

In an action for personal injuries by a married woman, she is not entitled to recover anything for loss of services or for expenses of medical or surgical treatment, but only for such damages as fairly compensate her for the pain and suffering and physical impairment which she has incurred.

3. SAME—EXCESSIVE DAMAGES.

Where the main injuries to plaintiff, who was a married woman, were to her knee and leg, but not of such character as to result in entire loss of the use of the leg, and there was nothing in the case requiring punitive damages, a verdict in her favor for $8,218 should be reduced to $4,000.

Appeal from trial term, Herkimer county.

Action for personal injuries by Lena G. Austin against Rush Bartlett. From a judgment entered on a verdict for plaintiff, and from an order denying defendant's motion for a new trial, defendant appeals. Modified.

Argued before ADAMS, P. J., and McLENNAN, SPRING, and HISCOCK, JJ.

A. M. Mills and Charles D. Thomas, for appellant.

P. C. J. De Angelis, for respondent.

HISCOCK, J. While plaintiff, with her mother, upon September 4, 1889, was upon the highway in Herkimer county, passing defendant's premises in a cart drawn by one horse, a dog ran at and attacked the horse, frightening him, and causing him to run away. Plaintiff was thrown out, and received severe injuries, especially on one of her knees. Plaintiff claimed, and gave much evidence to prove, that the dog which attacked her ran out from defendant's premises, belonged to him, and for a long time, with express notice to and knowledge by defendant, had been accustomed to indulge in this pernicious habit of running after and pursuing persons lawfully traveling upon the public highway. It was claimed by defendant that the offending dog was not his, but that of a tenant, Hinckley, who lived upon his farm. Many exceptions were taken to the rulings of the trial justice upon questions of evidence, and also to his charge and refusals to charge. We regard it so clear that they do not present any material or substantial errors that we do not deem it necessary to discuss these exceptions in but one instance. Three theories were submitted to the jury of the attack by the dog. Plaintiff, by her complaint and evidence, at all times constantly claimed and urged that it was defendant's own dog, and that contention was in an unexceptional manner submitted to the jury. Defendant, in support of his claim above referred to that the dog was not his, put upon the stand the son of his tenant, who, in substance, testified that upon that evening he went from his father's to defendant's house; that when he started his father's dog started with him, but ran off on the highway after some passer-by, and that was the last the witness saw of him until he ran into defendant's yard after plaintiff's horse had been frightened; that when he saw his dog following plaintiff he tried to stone him off. The trial judge clearly and specifically instructed the jury that, if plaintiff was attacked by Hinckley's dog, under the circumstances above outlined, it was to be regarded as under the dominion and control of its master, and defendant would not be liable. He then went further, and presented the third theory, by which he fairly permitted the jury to find a verdict against defendant if it should decide that it was Hinckley's dog which made the attack, under other than the above special circumstances, and that defendant had harbored and kept it about his premises with knowledge of its character, which the proof amply justified the jury in finding was vicious in the respect under consideration. Defendant not only excepted to this,

but by affirmative requests to charge presented the claim that defendant was not liable for Hinckley's dog under any circumstances. These exceptions, in our judgment, merit a brief consideration. We believe that a jury had the right to find that Hinckley's dog did run out from defendant's premises at plaintiff, and that his pursuit was not under the circumstances testified to by young Hinckley, and which, as before stated, were held not sufficient to make defendant liable. It may not be permissible to accept young Hinckley's evidence as true that it was his dog that chased plaintiff's wagon, for the purpose of sustaining this theory, and then disregard it as untrue in stating the circumstances under which it did it, and which would exempt defendant from liability. Plaintiff's evidence, however, is that one dog chased her coming out of defendant's premises, and there is the evidence of a witness (Austin) that there was only one dog, and that it was the Hinckley dog. There was other evidence in the case that these two dogs were much around defendant's premises, looking more or less alike, and upon the whole a jury might have been permitted to find that plaintiff was mistaken as to the dog which chased her, and that it was Hinckley's dog, instead of the defendant's, and that Hinckley's dog, therefore, did not necessarily get after her in the manner claimed by his son. We think also that there was sufficient evidence that defendant harbored and permitted this dog to be around his premises, and that he knew of its character in rushing out at travelers upon the highway; upon the effect of which evidence see the case of Quilty v. Battie, 135 N. Y. 201, 32 N. E. 47, 17 L. R. A. 521. If we assume that plaintiff's complaint did not include this theory of a cause of action against defendant, we feel clear in holding that this objection was not sufficiently pointed out or brought to the attention of the court by the defendant. It was not in any manner suggested that the rulings of the court upon this point transgressed the limits of the complaint. This, of course, should have been done if this was the respect in which the charge was claimed to be erroneous. We doubt, however, if counsel, by his objections, at this point intended to present the contention either that the evidence did not warrant a finding by the jury that it was the tenant's dog, or that such course was not permissible under the pleadings. We are confirmed in this belief not only by what took place upon the trial, but also by the appellant's brief in this court, in which neither of those claims is urged. The burden of the complaint with this portion of the charge here is, and below we infer was, that there was not sufficient evidence of defendant's harboring and knowledge of his tenant's dog to make him responsible, and we readily decide against that claim. We thus reach the conclusion that the judgment and order appealed from should be affirmed, subject, however, to the consideration of the claim that the verdict was for excessive damages, and should be reduced. The evidence amply warranted the jury in finding that the plaintiff was very severely and painfully injured; that these injuries resulted from the vicious and unjustifiable conduct of a dog in pursuing and frightening her horse; and that this conduct of the animal on this occasion, whichever dog it was, was in accord-

ance with a habit which had existed for a long time, and with which defendant was perfectly well acquainted. In short, it might almost have been found that defendant in keeping or harboring, as he did, the dog in question, with knowledge that it was accustomed to harass travelers on the highway, was quite indifferent to their rights.

Plaintiff, at the time of the accident, was a married woman, and therefore not entitled to recover anything for loss of services, or for expenses of medical or surgical treatment. She can only recover such damages as will fairly compensate her for the pain and suffering and physical impairment which she has incurred. While she sustained quite considerable and painful injuries outside of those to her knee and leg, the latter were still the main ones, both in point of suffering and permanency. We are inclined to think, however, that it is not probable that the latter will result in entire loss of the use of the leg, but that she will be able to have quite a substantial use thereof. Taking this view, and also having in mind, upon the other hand, that there is nothing in this case which requires us to measure damages by any such rule as will result in injustice to the plaintiff, we conclude that a reduction of the verdict to $4,000 will be proper.

The judgment and order appealed from therefore are reversed, and a new trial granted, with costs to appellant to abide event, unless plaintiff stipulates to reduce the recovery to $4,000, in which case said judgment as thus modified and order are affirmed, without costs of appeal to either party. All concur.

---

(36 Misc. Rep. 181.)

### HARRIS v. MINNEAPOLIS, ST. P. & S. STE. M. R. CO.

(Supreme Court, Appellate Term. October, 1901.)

CONNECTING CARRIERS—DELAY—LIABILITIES.

    A shipping receipt issued by a carrier provided that it should not be liable for any damage by causes beyond its control, nor for loss or damage not occurring upon its own road. *Held*, that where a connecting carrier delivered goods received to the next connecting carrier without negligence on its part it is not liable to its assignor for delay because of a subsequent transaction between the last connecting carrier and the consignee, whereby the goods were stored at the terminus, by his request, until he could communicate with his consignor, which resulted in the absolute refusal of the consignee to receive the goods five weeks later.

Appeal from municipal court, borough of Manhattan, Second district.